E-FILED
Tuesday, 21 February, 2006  02:14:45 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TREYONDA TOWNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1300 |
| | ) | |
| REGIS CORPORATION, d/b/a | ) | |
| MASTERCUTS, | ) | |
| | ) | |
| Defendant. | ) | |

# O R D E R

This matter is now before the Court on Defendant, Regis Corporation's ("Regis"), Motion for Summary Judgment.  For the reasons set forth below, Regis' Motion for Summary Judgment [#16] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.

## FACTUAL BACKGROUND

Regis owns and operates numerous hair salons throughout the country, including the MasterCuts Salon in Bloomington, Illinois.  From November 2002 through September 2004, Marcia Behm ("Behm") was the Salon Manager of the Bloomington salon.  Behm's direct supervisor was the Area Supervisor.  At all times relevant to this litigation, Lachelle Hartline ("Hartline") was Behm's Area Supervisor.

On March 25, 2003, Behm hired Plaintiff, Treyonda Towns ("Towns"), as a part-time stylist at the Bloomington salon.  Behm knew that Towns was a student when she hired her her to work nights and weekends.

The practice for requesting time off at the Bloomington salon was for employees to submit written requests directly to Behm or to post a written request on the bulletin board in the back of the salon before the schedule was posted.  Behm required stylists to submit requests for time during the week the schedule was made, and in any event, more than a week before the date they needed off.  If someone turned in a schedule request after the schedule was made, Behm would attempt to accommodate the request based on business needs, but could not always do so.  During her employment, Towns requested schedule changes for certain days that she could not work.  Many of these requests were approved by Behm, even when they were not requested with the required notice.

Near the end of September 2003, Towns requested that she not work Thursday evenings, Friday evenings, or Saturdays after 3:00 p.m. during the month of October 2003. On October 12, 2003, Towns met with Behm and Hartline to discuss this request.  During the meeting, Hartline and Behm presented her with two written "last chance" documents. The first document stated:

> The hours she requested off will be given to her but not changed bac(k) unless the salon needs change.  Supervisor and manager has tried repeatedly to work around her scheduling problems.  This is the last time adjustments or any accommodations will be made to Treyonda's schedule.  If she feels that she can not work her one day or does not show up, she will be terminating herself.  This is all we can do now or in the future due to constant and sudden changes to her schedule.

The second document stated:

> I [Treyonda Towns] understand that due to the fact that I am missing work, I will be cutting my schedule down to Sundays only; or I will be resigning my position at Mastercuts.  I have requested that I can only work one day per week (Sundays).  I also understand that if I do not show up for my one day per week; or call in less than 2 hours prior to shift I will be terminating myself.  I have also been informed again that a doctor's excuse dated for the day I miss will have to be provided.   Any one unexcused absence will result in my resignment.  Today I also was informed that I will not receive my former schedule back unless there is prior approval by my supervisor and salon manager.

Towns signed one of these documents.  It was her understanding that she would be scheduled to work every Sunday thereafter, and she reported to work every Sunday from October 12, 2003 through November 23, 2003.

The next Sunday, November 30, 2003, close to the time Plaintiff was supposed to report to work, Towns' daughter called the salon stating that Towns would not be coming to work that day.  Towns does not know who her daughter spoke with at the salon that day; however, it is undisputed that neither Towns nor her daughter spoke with Behm or any other member of Regis management.

Regis contends that Towns was scheduled but failed to report to work the following Sunday, December 7, 2003.  Towns maintains that she called the salon to verify the schedule but was told that she was not on the schedule and also checked the schedule personally between November 30, 2003, and December 7, 2003, to verify that she was not scheduled to work.  Towns never spoke to Behm or Hartline about being placed on the schedule or working at MasterCuts after November 23, 2003.  Regis considered Towns to have abandoned her position.

On August 30, 2004, Towns filed this suit alleging that she was the victim of unlawful racial discrimination, harassment, and retaliation.  Regis has now moved for summary judgment.  The matter is fully briefed, and this Order follows.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  Celotex, 477 U.S. at 324.  Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]."  Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989).  Summary judgment will be denied where a reasonable jury could return a verdict

for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

Before reaching the separate claims asserted in this litigation, the Court must pause to comment on the inadequacy of Towns' response brief.  Out of a 39 page response, 34½ pages are dedicated to facts and only two and a half pages are addressed to "Argument" or any attempt to place the asserted facts into some sort of legal context.  The response is utterly devoid of any citation to legal authority or controlling precedent.  Nor does it contain any attempt to acknowledge the validity of the authority cited by Regis and apply the facts thereto.  In fact, Towns makes no attempt to respond directly to the argument in the motion for summary judgment by explaining any disagreement with Regis' explanation of each point of law, why a point of law does not apply to the undisputed material facts, etc., as required by Local Rule 7.1(D)(2)(c).

While the Court is accustomed to receiving pleadings of this nature from pro se litigants, the Court has seldom received such a perfunctory and undeveloped response from a party who was represented by counsel.  However, the Court will not summarily punish Towns for the omissions of her counsel, and where counsel has provided marginally sufficient context to identify an assertion with a particular claim, the Court will attempt to consider the assertions contained in her response.

I.    Disparate Treatment

Title VII prohibits employers from discriminating "against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1); Meritor

Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 2404 (1986).  Under Title VII,

the plaintiff is required to establish that she has been the victim of intentional discrimination.

Mojica v. Gannett Co., Inc., 7 F.3d 552, 561 (7th Cir. 1993).  The plaintiff may present direct

proof of discrimination, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989),

or may rely on indirect evidence using the McDonnell Douglas Corp. v. Green, 411 U.S.

792, 93 S.Ct. 1817 (1973), burden shifting method of proof.[1]

    A.    Direct Method

    Towns makes the summary assertion that she "has direct evidence that bear [sic]

on the issues in this case, a party admission."  Presumably, she is referring to the Affidavit

of Leanne Harp ("Harp") and suggesting that it is sufficient in and of itself to allow her to

proceed under the direct method.  A plaintiff proceeding under this method may rely on

either direct evidence or circumstantial evidence.  Logan v. Kautex Textron N. America, 259

F.3d 635, 638 (7th Cir. 2001).  "Direct evidence is evidence which, if believed by the trier

of fact, will prove the particular fact in question without reliance upon inference or

presumption. . . . Direct evidence is a 'distinct' type of evidence that uniquely reveals 'intent

to discriminate[, which] is a mental state."  Rudin v. Lincoln Land Community College, 420

F.3d 712, 720 (7th Cir. 2005).  The evidence must relate to the specific employment

decision in question and is essentially "an 'outright admission' that a challenged action was

undertaken for one of the forbidden reasons covered in Title VII."  Id.; Cardoso v. Robert

Bosch Corporation, 427 F.3d 429, 432 (7th Cir. 2005).

---

    [1] In her jurisdictional statement, Towns also references a claim of racial
discrimination under 42 U.S.C. § 1981.  However, her § 1981 claim need not be
separately addressed, as the standards for resolving such claims are indistinguishable
from those applied under Title VII.  Accordingly, Towns' § 1981 claim is implicitly
resolved by the resolution of the Title VII discrimination claim.

Circumstantial evidence under the direct method allows the trier of fact "to infer intentional discrimination by the decisionmaker." Rudin, 420 F.3d at 720. The Seventh Circuit has recognized three types of circumstantial evidence of intentional discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. . . . Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. . . . [T]hird is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief. . . .

Id. at 721, *citing* Troupe v. May Department Stores, 20 F.3d 734, 736 (7th Cir. 1994).

In order to establish her prima facie case under the direct method, Towns must prove that Regis was motivated by racial animus when it reduced her hours and claimed that she had abandoned her employment at the Bloomington salon. Contrary to her assertions, she clearly has no direct evidence of discriminatory animus. Rather, she relies on the statement in Harp's Affidavit that Behm "wanted to fire Treyonda but she couldn't get permission because she was black . . . ." With all due respect, this statement evidences only that Behm wanted to fire Towns; it does not evidence in any way the reason why Behm wanted to terminate Towns, much less establish that Behm wanted to terminate Towns because of her race. The fact that Regis would not allow Towns' summary dismissal because of her race is simply not the same as an admission that Behm acted with racial animus in recommending Towns' termination. In fact, the statement attested to by

Harp actually cuts in favor of Regis and suggests that Towns received more favorable treatment because of her race and thereby avoided summary dismissal.

The other statements allegedly made by Behm referenced in Harp's Affidavit are even less direct and include isolated comments such as: (1) "Those kind of people you got to watch because they will steal anything;" (2) "It won't be long now before we get rid of her;" (3) "They don't like to work;" (4) "With them it's always a black thing;" and (5) "It's a black thing.  You know how these black girls are always trying to get out of work.  They don't like to work.  I just don't trust her."  However, the record does not indicate that any of these stray remarks were either contemporaneous with or causally related to the specific employment decision in question, namely the reduction in Towns' hours and claimed abandonment of her job, or come close to evidencing an outright admission that the challenged actions were taken for a forbidden reason.  *See* Cardozo, 427 F.3d at 432; Rudin, 420 F.3d at 720.  Several of the statements do not even specifically refer to Towns or race.  In order to satisfy her burden under the direct method, "[s]uch evidence must not only speak to directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question."  Haywood v. Lucent Technologies, 169 F.Supp.2d 890, 908 (N.D.Ill. 2001).

Moreover, Behm clearly knew that Towns was African American when she hired her only eight months before.  This raises an inference that Behm was aware of Towns' race from the outset and did not suddenly develop an aversion to her based on that consideration.  Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 399 (7th Cir. 1997); Wang v. Bell & Howell Document Management Products, Co., 2000 WL 1847979, at *3

- 8 -

(N.D.Ill. Dec. 15, 2000).  Towns has therefore failed to meet her burden under the direct method.

B.    Indirect Method

Having failed to present direct evidence of racial discrimination, Towns must then attempt to proceed under the McDonnell Douglas burden-shifting analysis.  Under this analysis, Towns must carry the initial burden of establishing a prima facie case of discrimination by showing:  1) she was a member of a protected class; 2) she was performing her job satisfactorily or meeting her employer's legitimate performance expectations; 3) she was subjected to a materially adverse employment action; and 4) others outside of the protected class were treated more favorably.  McDonnell Douglas, 411 U.S. at 802; St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993); Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1032 (7th Cir. 1998); Hoffman-Dombrowski v. Arlington International Racecourse, Inc., 254 F.3d 644, 650 (7th Cir. 2001).  While Regis does not contest her ability to satisfy the first prong of this analysis, her compliance with the second, third, and fourth criteria is challenged.

Towns' analysis under the indirect method consists of a single paragraph.

> Plaintiff is undisputedly a member of a protected class.  She performed her job satisfactorily in that she received 1 customer complaint, allegedly, during her 8 months of employment.  Her frequent scheduling changes was [sic] conducted by a salon procedures [sic] whereby all employees engaged in frequently scheduling changes because there were no fixed work schedules in the salon but instead and [sic] open scheduling procedure.  The Plaintiff suffered a severe adverse action when her workweek was forcibly reduced from 18 to 24 hours a week to 4 hours a week.  Her co-employees reported late and were not sent home and she on the other hand was sent home for reporting late.  All of her co-employees had a key to the salon except the Plaintiff.  All of her managers participated and approved her being written up, no evidence of the same

- 9 -

> team work to discipline her co-employees, she was given written warnings when written up while her co-workers were generally given verbal warnings. Plaintiff and her co-workers performed the same type of service and the same body licensed them.

(Towns' Response at 37.)

With respect to the second prong, Towns argues that she was performing satisfactorily because she received only one customer complaint during her time at the Bloomington salon. Towns does not deny that Behm received a complaint from a customer in early August 2003 regarding the services that she had received from Towns or that after being counseled for this situation, she responded, "if that's the way it's going to be, I'm going to give my two weeks." Behm then wrote her up for being unprofessional and having a poor attitude. On August 14, 2003, Towns received write-ups for calling in shortly before a scheduled shift without informing her manager, leaving early when there were customers waiting. Towns further admits that she was written up on August 23, 2003, for failing to properly ring in a sale in violation of Regis Security Policy and failing to accurately record payments immediately following the completion of the service or product sale on August 14, 2003. Although there appears to be some confusion about whether the date was September 14, 2003, or September 19, 2003, Towns admits that she was written up and sent home for coming to work nearly an hour late.

Given this record evidence, Towns' assertion that she was performing satisfactorily and meeting her employer's legitimate expectations is nothing more than a self-serving statement of opinion without factual support in the record. It is well established that a plaintiff cannot defeat summary judgment through conclusory allegations that are nothing more than "[s]elfserving assertions without factual support in the record." <u>Weeks v.</u>

<u>Samsung Heavy Industries Co., Ltd.</u>, 126 F.3d 926, 934 (7th Cir. 1997), *quoting* <u>Jones v. Merchants National Bank and Trust Co.</u>, 42 F.3d 1054, 1058 (7th Cir. 1994); <u>Jackson v. E.J. Brach Corp.</u>, 176 F.3d 971, 985 (7th Cir. 1999).

Regis also challenges Towns' ability to demonstrate that she suffered an adverse employment action. Towns contends that she "suffered a severe adverse employment action when her workweek was forcibly reduced from 18 to 24 hours a week to 4 hours a week." However, it is difficult to see how this can be deemed actionably adverse when the reduction was made at Towns' request. She was a full-time college student and was working two internships. Therefore, she was generally available to work only nights and weekends. In October 2003, she started working for another company and attended evening training classes. Towns admits that she requested that during the month of October 2003, she could not work her regularly scheduled Thursday evenings, Friday evenings, or Saturdays after 3:00 p.m.

While a substantial reduction in hours could constitute an adverse employment action under certain circumstances, such a reduction is not actionable when it is done at the plaintiff's request. Towns seems to argue that it was adverse because Regis made the change permanent despite her intention that this reduction be temporary. However, Towns has not cited, and the Court is otherwise unaware of, any precedent requiring Regis to accept such a drastic change in a part-time employee's hours on either a permanent or temporary basis. Rather, Regis could have simply declined her request and terminated her for failing to report for work as scheduled rather than attempting to keep her as an employee by scheduling her to work on the one day that she indicated that she would be available.

Finally, Regis argues that Towns has not identified any similarly situated employee outside the protected class that was treated more favorably.  While a complete identity is not required in order for employees to be similarly situated, a plaintiff must show "a 'substantial similarity' between their positions, such as a common supervisor and similar standards governing their performance." Adams v. Triton College, 35 Fed.Appx. 256, 2002 WL 850391, at *260 (7th Cir. April 29, 2002), *citing* Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000).  The comparable individual must also have "engaged in  similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  Id.; *see also,* Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 546-47 (7th Cir. 2002) (noting that a plaintiff must show that the employee held the same or equivalent position or title and performed the same or similar duties, had the same superior, and committed the same misconduct.)

Towns has not presented any non-African American part-time stylist with similar performance issues that requested a reduction in hours, failed to report as scheduled, and was not deemed to have abandoned her position.  She argues that she was written up nine times in August 2003, with seven of those reprimands being written warnings, while her co-workers received a total of seven write-ups from January 2003 through September 2003, with five of the seven designated as verbal warnings.  Of these, three were given to Heather Gardner ("Gardner"), a white full-time stylist, for opening the salon late and violation of the "drawer duty" rule.  Another stylist, Lacy Diekow ("Diekow"), was issued one write-up for excessive call off and schedule changing.  Towns asserts that she was the only employee who was issued multiple written warnings for the same incident and that five of her write-ups contained threats of possible termination if the problem repeated itself.  She

further contends that co-employees reported late and were not sent home while she was sent home for reporting late and that all of her co-employees had a key to the salon but she did not.

With all due respect, Towns misapprehends her burden with respect to the fourth prong of the prima facie case. She must show that these employees outside of her protected group are directly comparable in all material respects. Towns focuses only on how the treatment was different, all the while ignoring the requirement that the individual be similarly situated in terms of the same position/title, same superior, and same misconduct. She has not identified any other employee who was in a part-time stylist position, and for this reason alone, she has failed to satisfy the fourth element under McDonnell Douglas. Nor has she made any real effort to establish that the misconduct was equivalent. For example, Towns had not pointed to anything in the record to establish how late Gardner was in opening the salon on the date that she was not sent home, while the record indicates that Towns was nearly an hour late for her shift, requiring Behm to come in and cover for her on the date that she was sent home. Similarly, she makes no effort to demonstrate that Diekow's write-up for excessive calling off and schedule changes addressed conduct that was similar in duration or degree to her own conduct. Absent such information, the Court cannot find that differentiating or mitigating circumstances do not distinguish either the misconduct or Regis' treatment of the two employees. Thus, Towns has failed to meet her burden of identifying any similarly situated employees outside of the protected class that were treated more favorably.

As the Court finds that Towns has failed to establish three elements of her prima facie case under the indirect method, there is no need to address whether Regis has

provided a legitimate, non-discriminatory reason for its actions or whether Towns can establish that this reason is pretextual.  Regis is therefore entitled to summary judgment on her disparate treatment claim.

II.    Retaliation

Title VII provides in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Under the direct method for proving retaliation, a plaintiff must present direct evidence of: (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two.   Rhodes v. Illinois Department of Transportation, 359 F.3d 498, 508 (7th Cir. 2004); Williams v. Waste Management of Illinois, 361 F.3d 1021, 1031 (7th Cir. 2004).  Although other formulations of a prima facie case of retaliation have been used in the past, the Seventh Circuit has clarified that an indirect prima facie case of retaliation requires the following showing:

> [A]n employee must demonstrate that: (1) [he] engaged in statutorily protected activity; (2) [he] performed [his] job according to [his] employer's legitimate expectations; (3) despite meeting [his] employer's legitimate expectations, [he] suffered a materially adverse employment action; and (4) [he] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002), citing Stone v. City of Indianapolis Pub. Utils. Div., 280 F.3d 640, 644 (7th Cir. 2002); Spencer v. Thomas, 2002 WL 378179, at *3 (7th Cir. March 7, 2002); Haywood V. Lucent Tech., Inc., 323 F.3d 524,

- 14 -

531 (7th Cir. 2003).  In the absence of direct evidence, "failure to satisfy any element of the prima facie case proves fatal to the employee's retaliation claim."  Hilt-Dyson, 282 F.3d at 465.  If the plaintiff establishes a prima facie case through the indirect method, the defendant may then come forward with a legitimate, non-invidious reason for the adverse action.  Haywood, 323 F.3d at 531.  "Once the defendant presents a legitimate non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual."  Id.

Regis first argues that it is entitled to summary judgment on Towns' retaliation claim because she did not engage in any statutorily protected activity.  Title VII protects an employee from "retaliation for complaining about the types of discrimination it prohibits."  Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058, 1066 (7th Cir. 2003), citing Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).  While an employee need not use magic words like "race" or "racial discrimination" in order to invoke the protections of Title VII, "she has to at least say something to indicate her [race] is an issue."  Sitar v. Indiana Dept. of Transportation, 344 F.3d 720, 727 (7th Cir. 2003).  An employee may honestly believe that she has suffered discrimination, but if she never mentions it, "a claim of retaliation is not implicated."  Id., citing Miller, 203 F.3d at 1008.

Here, Towns made a non-specific complaint to "Behm's supervisor's boss" on August 10, 2003.  According to her Affidavit, the substance of her complaints were as follows:

> I did complain to Donna in the aforementioned telephone conversation that I felt I was being treated different or worse that [sic] the other employees.  I complain [sic] that I was being written up unfairly and more that [sic] the other employees and I was constantly being required to meet with Behm during work

> hours and I told her all of my complaints of unfair treatment by
> Behm and her response was that she trusted Behm.

(Towns Affidavit at ¶ 4.)  She admits that this complaint did not mention race as the basis of her complaint, nor did she otherwise suggest that she believed that these problems existed because she was a African American.

Even accepting Towns' version of the August 2003 conversation, her complaints were general and stopped short of indicating that the reason that she was not being treated the same was due to her race.  In this respect, her situation is similar to the plaintiff in Miller, where her complaints "concerned a general displeasure with being paid less than her co-workers given her longer tenure and the fact that she had trained some of them." 203 F.3d at 1008.   In that case, the Seventh Circuit also rejected the sufficiency of an employee's subjective belief that her supervisors knew that her complaints centered around her belief of [racial] discrimination as mere speculation and that could not create the factual dispute needed to ward off summary judgment.  Id.  And as in Miller, the Court must conclude that Towns has not produced "'evidence from which it could reasonably be inferred that [her employer] more likely than not' knew she was concerned" about racial discrimination.  Id., citing Senner v. Northcentral Technical College, 113 F.3d 750, 758 (7th Cir. 1997).

Moreover, assuming that the August 2003 comment could have been sufficient to place Regis on notice that she was complaining of racial discrimination, that comment occurred nearly four months prior to the time that she was deemed to have abandoned her job.  The Seventh Circuit has held that a four month lapse between protected expression and the adverse employment action negates any causal inference based on temporal connection.  Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999) (finding

four months too long); <u>Davidson v. Midel fort Clinic</u>, 133 F.3d 499 (7th Cir. 1998) (finding no causal inference where termination came five months after filing EEOC charge).  This conversation also occurred after Towns had already been issued several warnings and warned that future performance problems would subject her to further discipline, thereby negating any reasonable inference that the write-ups were done in retaliation for her complaint.  Towns has therefore failed to satisfy the first prong of the test for establishing a prima facie case of retaliation under either the direct or indirect method.

Although the Court must exercise caution in granting summary judgment in cases such as this, where intent and credibility are arguably crucial issues, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita</u>, 475 U.S. at 586.  The Court has an obligation to remove factually insubstantial cases from its docket where "no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment."  <u>Mills</u>, 83 F.3d at 846.  After considering the record as a whole, the Court finds that Towns has failed to present sufficient evidence from which a reasonable jury could infer that she engaged in statutorily protected activity or that the actions complained of were actually taken in retaliation for her having made such a complaint.  Accordingly, Regis is also entitled to summary judgment on the retaliation claim.

III.    <u>Harassment</u>

In her Complaint, Towns appears to allege that she was the victim of hostile work environment racial harassment.  Racial harassment is not even mentioned in her Affidavit in support of her response or in the portion of her response dedicated to argument; the only possible attempt to reference this claim in that section of her brief is the summary assertion

that, "[t]he level of hostility was enough to force the Petitioner out of her job and out of the field of hair care altogether."  Such a perfunctory and undeveloped argument is deemed waived.  *See*, Corder v. Lucent Technologies, 162 F.3d 924, 929 (7th Cir. 1998); Delta Air Lines, Inc. v. Colbert, 692 F.2d 489, 491 (7th Cir. 1982); Finance Investment Co. v. Geberit AG, 165 F.3d 526, 1998 WL 890372, at *1 (7th Cir. Dec. 23, 1998) (finding a perfunctory and undeveloped argument to be waived); Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection, 344 F.3d 680, 689 n.6 (7th Cir. 2003); Indurante v. Local 705, International Brotherhood of Teamsters, 160 F.3d 364, 366 (7th Cir. 1998); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 668 (7th Cir. 1998), cert. den., 119 S.Ct. 890 (1999).

Even assuming that Towns has not waived her harassment claim, Regis would still be entitled to summary judgment.  Harassment is a subset of discrimination.  Meritor Savings Bank v. Vinson, 477 U.S. 57, 65 (1986).  "Hostile environment" cases are those where, although no tangible employment action was taken, the harassment causes a hostile and abusive work environment.  Burlington Industries v. Ellerth, 118 S.Ct. 2257, 2263 (1998); Meritor, 447 U.S. at 67.  "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment."  Morgan, 122 S.Ct. at 2074 n.10.

Hostile environment harassment is violative of Title VII (and § 1981) if it is so severe or pervasive that it alters the terms and conditions of the victim's employment.  Meritor, 447 U.S. at 67.  In order to maintain a claim, a plaintiff must prove that:  (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe and pervasive so as to alter the conditions of her

environment and create a hostile or abusive working environment; and (4) there is a basis for employer liability.  Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1032 (7th Cir. 1998); Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2283 (1998); Dockter v. Rudolf Wolff Futures, Inc., 913 F.2d 456, 459 (7th Cir. 1990).  The employer can be liable for a hostile work environment created by the employee's co-workers only when the employee shows that her employer has been "negligent either in discovering or remedying the harassment."  Parkins, 163 F.3d at 1032; Hostetler v. Quality Dining, Inc., 218 F.3d 798, 809 (7th Cir. 2000).

To satisfy the objective component, an "objectively reasonable person" must find the conduct offensive.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).  To satisfy the subjective test, a plaintiff must demonstrate that the alleged conduct was unwelcome in the sense that she "did not solicit or incite it" and that she "regarded the conduct as undesirable or offensive."  Henson v. City of Dundee, 682 F.2d 897, 903 (11th Cir. 1982).  This is consistent with the Seventh Circuit's holding that harassment is unwelcome unless the court finds that the plaintiff exhibited "enthusiastic receptiveness" to the conduct in question.  Carr v. Allison Gas Turbine Div., General Motors Corp., 32 F.3d 1007, 1008, 1011 (7th Cir. 1994) (noting "[w]elcome . . . harassment is an oxymoron," and "[t]he district judge made no finding of 'enthusiastic receptiveness' in the present case"); see also Zorn v. Helene Curtis, Inc., 903 F. Supp. 1226, 1243 n.17 (N.D. Ill. 1995) (using the "enthusiastic receptiveness" standard).

As Towns makes no attempt to define or support her harassment claim, the Court is left to root through Towns' statements of fact in search of the basis of her

harassment claim, not unlike a pig in search of truffles.  Based on the Court's search, the instances of alleged racial harassment appear to be: (1) a comment by Behm that "some people just don't like to work" that was said in Towns' presence on three occasions during her employment, and (2) a comment by Behm regarding what she should do with her own "nappy" hair that was something like, "I have nappy hair, look at my hair, I always have problems with keeping this straight."  Towns concedes that neither comment made a specific reference to race or to Towns.

With all due respect, while these statements may be unbusinesslike, neither statement rises to an actionable level of severity or objective unreasonableness.  In determining whether an environment is objectively hostile or abusive, the Supreme Court has directed courts to look at the totality of the circumstances, including:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Faragher, 118 S.Ct. at 2283; Morgan, 122 S.Ct. at 2074; Russell v. Board of Trustees of University of Illinois at Chicago, 243 F.3d 336, 342-43 (7th Cir. 2001).  Courts have consistently held that offhand comments and isolated incidents do not amount to discriminatory changes in an employee's terms and conditions of his or her employment unless they are extremely serious in nature.  Faragher, 118 S.Ct. at 2283, citing Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S.Ct. 998, 1003 (1998); White v. The Money Store, 142 F.3d 441, 1998 WL 124062, at *6 (7th Cir. March 17, 1998), citing McKenzie v. Illinois Dept. of Transportation, 92 F.3d 473, 479 (7th Cir. 1996) (noting that "isolated and innocuous incidents will not support a hostile environment claim").  "An inquiry into the objective severity of harassment . .

. requires careful consideration of the social context in which particular behavior occurs and is experienced by its target."

Towns has alleged four statements not directly implicating race spanning her eight months of employment; conduct spread out over such a time frame cannot reasonably be construed as either relentless or persistent. Even if these statements could reasonably be deemed to have been racially based, none of this conduct was physically threatening or intimidating, and Towns has introduced no admissible evidence indicating that her ability to do her job suffered or that the alleged harassment unreasonably interfered with her work performance. Nor can the behavior be said to have been "so objectively offensive as to alter the 'conditions' of the victims employment." Cerros, 288 F.3d at 1046; Oncale, 118 S.Ct. at 998. In fact, Towns asserts that at all relevant times, she performed her duties as required, which suggests that the purported harassment did not unreasonably interfere with her ability to perform her job.

Title VII was not intended to be a "general civility code" and "does not guarantee a happy workplace." See Faragher, 118 S.Ct. at 2283-84; Oncale, 118 S.Ct. at 1002; Cerros, 288 F.3d at 1047. Consequently, the law draws a line between conduct that is merely vulgar and conduct "that can make the workplace hellish . . . ." Baskerville v. Culligan International Co., 50 F.3d 428, 430 (7th Cir. 1995). A review of the record before the Court reveals that the totality of the conduct complained of is analogous to the expressions of juvenile provocation and other ordinary tribulations of the workplace that have been held to fall on the nonactionable side of the line. *See*

Hardin, 167 F.3d at 345, *citing* Johnson v. Hondo, Inc., 125 F.3d 408, 412 (7th Cir. 1997).

This record simply does not demonstrate "'the quantity, frequency, and severity' of [conduct] that would 'create a work environment so hostile as to discriminate against the . . . employee.'" Johnson v. City of Fort Wayne, Indiana, 91 F.3d 922, 938 (7th Cir. 1996), *citing* Vore v. Indiana Bell Telephone, 32 F.3d 1161, 1164 (7th Cir. 1994).  Put another way, even when viewed in the light most favorable to Towns, her allegations when considered in their totality fail to demonstrate that her workplace was "hellish" in that it is "permeated with discriminatory intimidation, ridicule or insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working situation."  Fort Wayne, 91 F.3d at 938, *citing* Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S.Ct. 367, 370 (1993); Woods v. Bertelsmann Music Group, 191 F.3d 457, 1999 WL 699497, at *5 (7th Cir. September 3, 1999).[2]

Moreover, and perhaps more importantly, Towns has utterly failed to introduce any evidence suggesting that she experienced this treatment because of her race.  Aside from the fact that she is African American, which is insufficient in and of itself to supply the causal link, the record is devoid of any facts indicating that her supervisors or co-workers bore animosity toward her because of her race.  What is reflected in the record is that fact that Towns and her supervisor did not like each other very much and developed a strained working relationship.  However, animosity

---

[2] Parenthetically, the Court would also note that Towns failed to comply with Regis' harassment policy or otherwise properly avail herself of the remedial mechanisms provided in the employee handbook.  *See* Shaw v. Autozone, Inc., 180 F.3d 806, 812-13 (7th Cir. 1999).

toward an individual that has nothing to do with her race (or some other protected category not at issue in this case) is not illegal.

A review of the record reveals that Towns sincerely believes that all of the incidents that she complains of were motivated by her race.  However, her belief, no matter how sincere, is purely speculative and is not sufficient to support a hostile work environment claim.   As there is simply no evidence indicating that any of the conduct complained of was motivated by racial animosity, her racial harassment claim also fails.

<b>CONCLUSION</b>

For the foregoing reasons, Regis' Motion for Summary Judgment [#16] is GRANTED.  This matter is now TERMINATED.

ENTERED this 21st day of February, 2006.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge